## STOUT VS. SHEW.

1. SUPPLEMENTAL ANSWER — LACHES. Where a defendant applied for leave to file a supplemental answer eleven months after filing his answer, and in the mean time a reference had been ordered to take proofs and the cause had been continued at his instance to procure the testimony of an absent witness and a motion to amend his answer had been made and denied, and several terms of court had intervened, it was *held,* that the application came too late and was properly denied on account of *laches* of the defendant.

2. PARTIES BOUND TO SPEED THE CAUSE. A complainant must speed his cause by all proper and permissible rules and orders to bring it to a final hearing at the earliest period allowed by the practice, and it is incumbent on the defendant to answer fully and promptly all rules against him and when the cause is at issue to take his testimony preparatory to a speedy and final hearing.

3. PENAL DEFENSE. A defendant will not be allowed, under color of correcting an error, by supplemental answer to set up a new defense inconsistent with his former answer, nor will the court permit a supplemental answer to be filed setting up as a defense a *penal* law, by which the complainant's right is to be affected.

4. SUPPLEMENTAL ANSWER. A supplemental answer must contain a meritorious defense and be consistent with and in explanation of the original answer.

5. Supplemental answers are allowed as to small and immaterial matters or where a mistake has crept into the engrossment, or where new matter has been discovered since the original answer was put in, in case of surprise and of a mistake of names.

APPEAL from the District Court for *Milwaukee* County.

This was a bill to foreclose a mortgage.

The defendant filed a sworn petition for leave to file a supplemental answer to the bill of complaint, and tendered a sworn answer embracing the facts sought to be set up, the substance of which is stated in the opinion of the court together with a history of the steps which, up to that time, had been taken in the cause. The petition alleged that since filing the original answer, and since the last continuance of the cause, the defendant had discovered that certain facts, which he was advised and believed constituted a good defense and which are contained in the supplemental answer offered, ought to have been set forth in his original answer, but that they were not so set forth for the reason that his solicitor who drew the original answer entirely misapprehended his defense, although he had placed his exhibits in his hands and desired that they should be used in the way most proper for his defense : that the merits of his defense could not be reached upon the bill and original answer ; that when the original answer was filed he was under the impression that the facts ought to have been stated therein as they are in the supplement, and was desirous to have sworn to his original answer in the sense in which he wishes to swear to the supplement, but did not do so on account of the misapprehension of his solicitor ; that it is inequitable and unjust that he should be decreed to pay the mortgage money, or that the mortgage should be foreclosed, which he can make manifest if allowed to file his supplemental answer, and that the application for leave is not made for delay.

The district court denied the application, and rendered a decree for foreclosure in favor of the complainant, from which the defendant appealed.

*I. P. Walker*, for appellant. The district court should have allowed the application to file the proposed supple mental answer. 4 Johns. Ch. 375 ; 8 Ves. 79 ; 10 id. 285,

401. The defense set out shows that the contract which formed the consideration for the mortgage sought to be foreclosed, was in contravention of the act of congress, March 31, 1830; 4 Story's Laws U. S. 2188, 2189.

*Levi Hubbell* and *W. P. Lynde,* for appellee, cited 4 Sim. 54; 1 Ves. and Beav. 148; 2 id. 255; 1 Tur. and Ven. Ch. 554; Mitford's Eq. Plead. 324; 2 Mad. 375; 1 Barb. Ch. Pr. 161.

DUNN, C. J.  This is an appeal from a decree of foreclosure of mortgage, in favor of the appellee against the appellant, made by the district court of Milwaukee county, sitting as a court of chancery at the last March term thereof.

That the opinion which the court is called upon to give in this cause may be properly understood it is necessary to premise that, on the 2d day of February, 1842, the appellee, as complainant, filed his bill in the said district court against the appellant, as defendant, to foreclose a mortgage theretofore executed and delivered by defendant to one Marsh, and by said Marsh assigned to complainant.  On the same day the defendant was personally served with subpœna.  On the 2d June, upon application, a rule was entered by the judge of said court, at chambers, against the defendant, to plead, answer or demur to complainant's bill on or before the 22d of that month.  The defendant in due time responded to this rule by filing his demurrer to complainant's bill, and at the December term of said court the demurrer was overruled and the defendant ruled to answer in ten days.  Within the rule the defendant filed his answer, to which the complainant filed his replication, on the 7th February, 1843. At the June term thereafter, on motion of defendant, the court, by order referred the cause to a master, to take testimony therein on the part of defendant.  On the 21st August defendant filed his affidavit and moved the court to continue the cause.  The motion was sustained and the cause continued.  Afterward, on the 23d September,

the defendant moved the court for leave to amend his answer herein, and the motion was overruled by the court.

At the November term of said court the defendant presented his petition, praying leave of the court to file a supplement to his answer heretofore filed, herein, and thereupon submitted a motion for leave to file a supplemental answer, pursuant to the prayer of the said petition. The petition was sworn to and accompanied by an affidavit of one of defendant's counsel. The motion based upon the petition was overruled by the court. At the said March term the cause came on to be heard, and, after reference to a master and coming in of his report, a decree of foreclosure and sale of the mortgaged premises to satisfy the debt of the complainant, was entered, from which decree an appeal is prosecuted to this court by the defendant *Shew.*

It is insisted by the counsel for the appellant, in the review of this cause, that injustice has been done to appellant by the opinion and order of the district court, made at the November term, refusing him leave to file his supplemental answer, on the petition and motion referred to. In reviewing this opinion of the district court it will be necessary to consider the time of the application for leave, and the nature, as well of the answer as of the supplement sought to be introduced. In the history of the progress of this cause, from its commencement to the time of the opinion and order complained of, it must be apparent to every one who will examine carefully the rules governing chancery practice and the reasons of their adoption, that the application was ill-timed. In June, 1842, in answer to a rule, the defendant had demurred; in December the demurrer was overruled; in ten days thereafter his answer was filed; on the 7th of February, 1843, the complainant replied; at the June term thereafter, the defendant obtained a reference to a master to take testimony on his behalf; on the 21st of August the defendant, on his motion and affidavit filed,

obtained a continuance of the cause to procure the attendance of a witness before the master. On the 23d of September he moved for leave to amend his answer, and the motion was overruled; and so late as the November term, 1843, about eleven months after the filing of his answer, he moves the court for leave to file the supplement. Thus he permits the cause to be put at issue upon his answer, asks and obtains a reference to take his testimony, asks and obtains a continuance to procure the attendance of a witness before the master, and after all this, and the intervention of many special and regular terms of the court, with the privilege of applying to the judge at chambers for any interlocutory order, at this late day, he applies for leave to file a supplemental answer. We understand that in chancery practice, the duties of complainant and defendant are reciprocal. The complainant must speed his cause by all proper and permissible rules and orders, to bring it to a final hearing at the earliest period allowed by the practice in such cases, and it is equally incumbent on the defendant to answer fully and promptly all rules against him, and when the cause is at issue, to take his testimony preparatory to a speedy and final hearing. It would be certainly a palpable violation of these wholesome rules, laid down and enforced by reasoning in every approved work on chancery practice, to permit the defendant in a cause, to occupy the attention of the court and of the complainant with an answer solemnly filed under oath, for some eleven months, during which time many special and regular terms intervene, and important steps are taken by complainant and defendant to place their cause at issue, and take testimony for final hearing, and then for the first time, to come in and file a supplemental answer, which would necessarily compel the parties to retrace their steps in all which had been done after the filing of the original answer. The time of the application would alone justify the district court for refusing the leave asked; but a more forcible reason for

the court's opinion may be found in the inconsistency apparent in the original and supplemental answers. The court will not suffer itself to be taken by surprise, and under color of correcting an error, allow a defendant by supplemental answer, to make a new defense inconsistent with his former answer. 1 Turner & Venable's Ch. 556 ; 2 Ves. & Bea. 167. And it is further settled in law and equity practice, that a default in law will only be set aside to admit a plea to the merits and the plea of limitation, usury, etc., cannot be interposed. So in equity, the courts will not permit a supplemental answer setting up as a defense, a penal law by which the complainant's right is to be affected. The supplement must contain a meritorious defense, and be consistent with, and in explanation of the answer.

Defendants are permitted to amend by supplement according to chancery practice, as now well settled, in the following particulars : First, in small and immaterial matters. Bunbury, 248. Secondly, where a mistake had crept into the engrossment. 2 P. Wms. 426. Thirdly, where new matter has been discovered since the original answer put in. 10 Ves. 491. Fourth, in case of surprise. 1 Eq. Cases Abr. 29. Fifth, in mistakes of names. 11 Ves. 63. But where the defendant mistook, first, the law. *Pearce v. Grove*, 3 Atk. 522 ; Amb. 65, S. C. ; secondly, where the defendant had unintentionally perjured himself, and an indictment was suspended over him ; and, thirdly, where from the circumstance, that at the time of the answer put in, the defendant had not set forth his defense from an inability to state it with precision (2 Anstr. 363) the court has refused him the indulgence of amending.

Let us apply these principles to the defendant's original answer filed, and the supplement offered. The original answer admits the execution of the notes and mortgage, as alleged in complainant's bill. It avers, that on the 1st of February, 1838, the defendant and wife, and William Shew and wife, made and executed to Lemuel W. Weeks

a mortgage upon the same premises mentioned in complainant's bill, to secure the payment of the sum of $900 by installments, according to the obligation of three promissory notes in the mortgage mentioned ; that the premises then were the property of the United States and the defendant in occupation as settler or squatter ; that the mortgagors covenanted and agreed to obtain the title thereto, by pre-emption, public sale, private entry or otherwise ; that, if default was made in the payment of the money mentioned in the said mortgage, at the times stipulated, or any part thereof, the mortgagee had right to sell the mortgaged premises at public auction, to keep and retain the principal and interest due him, rendering the surplus, if any, to the mortgagors. That said mortgage was duly acknowledged and recorded in the office of register of deeds of Milwaukee county. The answer further avers, that afterward the said Weeks transferred said notes and mortgage to Joseph W. Marsh, the same person mentioned in complainant's bill, as defendant believes ; that in the month of June, 1839, the defendant purchased the said premises from the Territory of Wisconsin, at public sale, for the sum of $400, paying and securing to be paid to the Territory the said purchase money ; that the said premises were part and parcel of the land granted by the United States to the Territory, to aid in the construction of the Michigan and Rock river canal, and by the terms of the act of congress making the grant, it is provided, that all the land not otherwise appropriated or disposed of in those sections and fractional sections which are numbered with odd numbers on. the plats of the public surveys, within the breadth of five full sections taken in north and south or east and west tiers, on each side of the main route of said canal, from one end thereof to the other, are granted to the Territory, and reserving the even numbered sections and fractional sections, taken as above, to the United States. These lands are subject to the disposal of the legislature of the Territory, for canal purposes. And, further answering,

the defendant avers, that he is informed and believes that the main route of the canal has been so changed from its location that the said mortgaged premises are more than the breadth of five full sections from the main route of said canal, and that the sale of said premises to him by the Territory of Wisconsin is void. The defendant, in conclusion of his answer, avers, that after the sale of said premises to him by the Territory, and after the transfer of said notes and mortgage by Weeks to Marsh, at the request and instance of Marsh or his agent or attorney, the defendant executed the notes and mortgage mentioned in the complainant's bill, for the same cause of indebtedness, and in lieu of the said notes and mortgage to Weeks, and that upon such execution and delivery as aforesaid, it was expressly understood and agreed that the said Weeks or his assigns should cause the said mortgage to Weeks to be canceled and discharged, in a reasonable time, upon the records in the register's office for the county of Milwaukee, and that such execution and delivery was upon that express condition, which defendant avers has not been complied with, but that said mortgage now stands upon said records, uncanceled and undischarged, as by their inspection is apparent. These are the entire averments in the defendant's answer, with the usual conclusion.

The supplemental answer offered by the defendant, on his motion for leave to file a supplement, sets up, substantially, that William Shew was, in 1836, and before the 4th day of July, the occupant of the land and premises mentioned in said complainant's bill, and that the same belonged to the United States at the time; that on or about the said 4th he entered into an agreement, under seal, with one Jonathan W. Balch, by which he agreed and bound himself, his heirs, etc., to convey to said Balch, his heirs and assigns, by good and sufficient deed with warranty, one-third part of the said tract of land, when the title should be obtained by the said William Shew, at the land sales then expected to take place for

the Milwaukee land district, by which agreement the said
Balch was to, and did, pay to said William $200, in the
first place, for his claim; and was to furnish, at said land
sales, one-third of the money required to purchase said
land from the United States, which last sum the said
Balch never furnished. The said defendant also became
the purchaser of one-third of said tract of land, previous
to said 4th of July, of the said William Shew, for the
like consideration of $200; that William Shew, Balch
and himself, about the same time, entered into an agree-
ment to erect a saw mill, on a mill privilege, on said land,
at their joint expense. At the same time, defendant and
William Shew agreed with Balch to build a mill dam at
the said-mill seat, across the river Kinnikinick; the dam
to be built after the description contained in the agree-
ment, the said Balch paying to said William and defend-
ant, at the rate of $2 per foot for one-third of the dam
and bulkhead; that the dam and bulkhead were com-
pleted according to agreement, and the construction of
the mill proceeded until some $1,400 were expended,
when a settlement took place between defendant, Balch,
and William Shew; Balch was in arrears some $240, and
defendant and William Shew demanded of him to make
good and pay such sum, which he refused and neglected
to do. The defendant avers the respective amounts ad-
vanced and expended by himself, William Shew and Balch,
up to the settlement; it then proceeds and avers that about
the 21st day of November, 1836, Balch assigned the contract
with William Shew, and the agreement with William Shew
and himself, to Lemuel W. Weeks; denies that any con-
sideration passed from Weeks to Balch, or if any thing,
a very small amount; that William Shew and defendant
remained ignorant of the transfer or assignment to
Weeks, until about the 2d December, 1836, when Weeks
informed said William of the fact, who afterward informed
the defendant. At the time Weeks gave this information,
he paid said William $175, in part payment of the bal-
ance due from said Balch, for expenses on said mill,

leaving Balch in arrears some $65.62½. The receipt given for the money acknowledged Weeks as assignee of Balch. Defendant avers that no part of said payment ever came to his use ; that William Shew and defendant completed the mill dam, etc., about the 1st January, 1837, at the further expense of $133.90, without any further contribution by said Weeks. From the said last-mentioned day, until about the 21st February, 1838, the defendant and William Shew occupied the said tract of land, the said Weeks, during all that time, failing to make any further advances. At the day last mentioned, the defendant and William Shew purchased all the right, title and interest, either in law or equity, of said Weeks, assignee of said Balch, in the land and premises afore-said, the same still being the property of the United States, and executed to said Weeks, a mortgage on said premises to secure the payment of the balance of the purchase money. The only claim of said Weeks, against the defendant and William Shew, at the time of the pur-chase, grew out of the assignment from Balch before referred to. A receipt given by Weeks at the time, is referred to as evidence of the true consideration of the notes and mortgage then given to Weeks. The defend-ant, about the 1st April, 1838, purchased out the interest of William Shew, in the said premises, for the sum of $1,100. On or about the 18th June, 1838, the said tract of land, or premises vested in the Territory of Wisconsin, by virtue of the grant referred to in defendant's original answer. Afterward, about the        day of June, 1839, the defendant became the purchaser of said tract of land from the Territory, as averred in the original answer. The defendant further avers, that about the 17th April, 1840, the said Weeks, from circumstances of embarrass-ment, procured the said Marsh, named in complainant's bill, to become his secret trustee, to hold his property, effects and credits, in his, the said trustee's name. The said Marsh, being in this fraudulent relation to Weeks, about the day last mentioned, by urgent solicitations,

induced the defendant to execute to him a new mortgage and notes in lieu of the mortgage and notes to Weeks, as averred in the original answer. The defendant avers that this transaction was with design, on part of Weeks and Marsh, to defraud Weeks' creditors. The defendant denies that the execution of the notes and mortgage to Marsh, was to secure the payment of any sum due by him to Marsh, as he did not then, and never did, owe Marsh any thing. Upon the execution of the mortgage and notes to Marsh, the said Weeks delivered up to defendant the mortgage and notes given by defendant and William Shew to him, Weeks, which are lost and cannot be produced in court ; and, in conclusion of the supplement, the defendant avers that the giving of the said mortgage and notes to the said Marsh, as alleged in complainant's bill, was without any good consideration, and void, of which the said Marsh had notice at the time of their execution, of all which the said complainant, by his agent or attorney, had due notice at the time of the assignment to him. The defendant avers generally, that inasmuch as the various transactions recited in the answer and supplement, were done and performed while the said land and premises belonged to the United States, of which all the parties named had full notice, the said agreement, assignment, notes and mortgages, founded thereon, were contrary to public policy and the laws of the United States, and void and without any legal consideration.

Thus we have presented in contrast the substantial parts of the defendant's answer and supplemental answer offered, and it is too obvious to require elucidation or comment, that the supplement is not in aid or explanation of the answer, but assumes entirely new and distinct grounds of defense, and one too resting upon a penal statute of the congress of the United States, bringing the supplement in direct conflict with long settled principles in England and America, in regard to this kind of answer,

which, in practice, has entirely superseded an amended answer.

It is true that the defendant as a *salvo* to this supplement, and to force it within the rules laid down, has in his petition for leave to file it, sworn that he intended to swear to the original answer, in the sense in which he wished to be permitted to swear to his supplement. This oath embraces the rule as laid down in the authorities, but it is at war with the facts stated, and grounds of defense assumed in the supplemental answer; they being in their material parts, totally distinct and different from, and inconsistent with the original answer. The court might go further, and question, whether the defense set up in the supplemental answer, is permissible at all, under the circumstances in this case, to defeat the complainant's right to foreclose his mortgage, but is unnecessary to settle this question here. In support of the view taken by the court of the latter branch of this subject, we refer to 4 Johns. Ch. 375; 8 Ves. 79; 4 Simmons, 54–61; 1 Ves. & Beames, 149; 2 id. 255; Mit. Plead. 324; 2 Mad. Ch. 375; 1 Barb. Ch. 361.

We are of opinion that the district court decided correctly in overruling the motion for leave to defendant to file a supplemental answer herein, and therefore affirm the decree of the district court, with damages at the rate of seven per centum per annum on the amount of money decreed to complainant from the date of said decree, with costs, and order that it be so certified to said court.